UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-cv-14048-KAM

**PATRICIA KENNEDY**, individually,

    Plaintiff,

vs.

**CAPTAIN HIRAM'S HOTEL NORTH, LLC,**

    Defendant.

_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

    Defendant CAPTAIN HIRAM'S HOTEL NORTH, LLC ("Defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1 for the Southern District of Florida, hereby submits Defendant's Motion for Final Summary Judgment with Incorporated Memorandum of Law, and moves this Honorable Court for entry of final summary judgment in its favor and against Plaintiff PATRICIA KENNEDY ("Kennedy") on Plaintiffs' claims for violation of the Americans with Disabilities Act, 42 U.S.C. § et seq. ("ADA")

## INTRODUCTION

    This is an action by disabled Plaintiff Patricia Kennedy alleging wholesale "violations" of the ADA at Captain Hiram's Best Western Plus Sebastian Hotel and Suites ("Best Western Plus").

## **SUMMARY OF ARGUMENT**

Kennedy does not have standing to bring the instant litigation against Captain Hiram's for violations of the ADA. Kennedy has failed to provide a shred of credible evidence showing the threat of future injury which is required as a threshold matter to show standing to bring an ADA claim seeking injunctive ADA relief. Additionally, all alleged barriers encountered by Kennedy during her one night stay at the Best Western Plus have either been remedied, are not violations of the ADA, or are in the process of being remedied during the Best Western Plus's current renovation project and, therefore, Kennedy's claims against Captain Hiram's are moot. Furthermore, Captain Hiram's has gone above and beyond remedying the alleged barriers actually encountered by Kennedy and has remedied numerous other items listed in Kennedy's experts' Accessibility Inspection Report that Kennedy did not encounter as part of Captain Hiram's current renovation of the Best Western Property as a whole.

As other Court's in the Southern and Middle District of Florida have found, Kennedy's use of the ADA is not for its intended purpose. Kennedy suffered no actual injury in fact, she stayed at the Best Western Plus without complaint, and is now using the ADA and the legal remedy of injunctive relief for improper purposes with no standing to do so against the Best Western Plus. Kennedy has taken what is a laudable cause, if in fact a public accommodation discriminates on the basis of a disability because of its non-complaint features, and turned it into a disingenuous campaign that has become an ADA litigation mill. Thankfully, there is well settled federal law on what is required to prove standing and to prove the future injury required to allow plaintiff's to partake of the benefits of injunctive relief. Kennedy cannot meet that standing burden against Captain Hiram's and, as a matter of law, Kennedy's claims fail must fail.

Captain Hiram's respectfully requests that this Court enter Final Summary Judgment in its favor and dismiss Kennedy's Complaint for ADA injunctive relief against Captain Hiram's in its entirety.

## MEMORANDUM OF LAW

### Summary Judgment Standard

To obtain summary judgment, a party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might impact the outcome of the case under the applicable law. *See Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue is genuine if a rational trier of fact could find for the nonmoving party. *See id.* The moving party bears the burden to establish the basis for its motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). All justifiable inferences are to be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A district court must ensure that the motion is supported by evidentiary materials. *Id.*

### I. KENNEDY'S ADA INJUNCTIVE RELIEF CLAIM AGAINST CAPTAIN HIRAM'S FAILS AS A MATTER OF LAW

#### A. Plaintiff Lacks Standing to Bring Her ADA Claim Against Defendant

Kennedy brought approximately 138 ADA lawsuits in the District Courts of Florida in 2016. Accordingly, there is case law specific to Kennedy that is directly on point with the instant litigation:

> Article III grants federal courts judicial power to decide only cases and controversies. *Allen v. Wright*, 468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). The constitutionally minimum requirements for standing are: (1) the

> plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). [*14] "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges ... a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury." *Wooden v. Bd of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original). With respect to ADA cases, "courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).
>
> Kennedy does not have standing to complain about alleged barriers which are not related to her respective disabilities. *See Steger v. Franco*, 228 F.3d 889, 893 (8th Cir. 2000); *Ass'n for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F. Supp. 2d 1353 (S.D. Fla. 2001). Kennedy also does not have standing to complain about alleged barriers of which she was unaware at the filing of her complaint. *See Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1365-66 (S.D. Fla. 2001); *Resnick v. Magical Cruise Co., Ltd.*, 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001).

Access for the Disabled, Inc. v. First Resort, Inc., 2012 U.S. Dist. LEXIS 14011, *13-14 (M.D. Fla. September 28, 2012).

Kennedy's Complaint against Captain Hiram's is for Injunctive Relief pursuant to the ADA. (D.E. 1, Pg. 1). As such, "in addition, because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges…a real and immediate –as opposed to a merely conjectural or hypothetical- threat of *future* injury." *Shotz v. Cates*, 256 F. 3d 1077, 1081 (11th Cir. 2001)(internal citation and quotation marks omitted)(emphasis in original). Asserting a past injury is not enough. A past "exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)(internal citation omitted).

4

Additionally, "to sufficiently establish injury in fact a plaintiff must prove more than an intent to return to places previously visited. Someday intentions, without any description of concrete plans, or indeed even any speculation of when the some day will be, do not support a finding of actual or imminent injury that is required to show standing." *Rosenkrantz v. Markopolous*, 254 F. Supp. 1250, 1252 (M.D. Fla. 2003) *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64, 119 L. Ed 2d. 351, 112 S. Ct. 2130 (1992). Justice Kennedy concurred in *Lujan* and stated "that a plaintiff to show injury in fact must purchase an airline or indicate a date certain that they would return." *Lujan v. Defenders of Wildlife*, 504 U.S. at 564.

> Multiple district court decisions have defined factors that are important in determining when the "real and immediate" requirement of standing is met. For example, a district court in the Southern District of Florida held that a personal history of use of a facility and residence in the area supported a conclusion that standing existed. *See Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357. (S.D. Fla. 2001) Similarly, a district court for the District of Hawaii held that standing existed when plaintiff patronized other of defendant's franchises and the defendant franchise was within a reasonable distance from plaintiff's residence. *See Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079-80 (D. Hawaii 2000). Additionally, another district court for the District of Hawaii held that standing did not exist when the plaintiff only stated that she would "look into" another trip on defendant or another cruise line in the near future. *See Deck v. American Hawaii Cruises, Inc*., 121 F. Supp. 2d 1292, 1299 (D. Hawaii 2000). For slightly different reasons, a district court in the Eastern District of Virginia held that standing did not exist when the plaintiff moved to a different state after being discriminated against. *See Hoepfl v. Barlow*, 906 F. Supp. 317, 320 (E.D. Va. 1995). Finally, a district court in the Northern District of California held that standing did not exist when the plaintiff stayed in an area only a couple of days a year and could not show that she would need to use the hospital again. *See Aikins v. St. Helena Hosp*., 843 F. Supp. 1329, 1333-34 (N.D. Cal. 1994).
>
> *Rosenkrantz v. Markopolous*, 254 F. Supp. at 1252-53.

The Court in *Rosenkrantz v. Markopoulous* looked at several factors in making its determination that the plaintiff did not establish a "future injury" for purposes of standing to bring suit for injunctive ADA relief: 1.) distance plaintiff lived from hotel defendant; 2.) whether

5

plaintiff had any ties to or reason to visit the hotel i.e. family/friends in the area; 3.) frequency of plaintiff's travels; and 3.) whether plaintiff had any concrete future travel plans. *Id*. at 1253. Here, Kennedy has failed to prove those requisite elements. The Court also noted that plaintiff had sued countless other hotels all of which plaintiff "intends to stay there in the future." *Id*. Ultimately, the Court found that Plaintiff failed to establish standing to bring the suit as he lived hundreds of miles away, his travel to the Tampa Bay area was irregular, accessional, and infrequent, and the fact that his sister-in law lived 20 miles away from Clearwater was not persuasive given the numerous other hotels plaintiff could stay at along the way to his sister-in-law many of which he had sued (All of the same circumstances which are present in the instant litigation.) *Id*.

The Middle District in *Steven Brothers v. Tiger Partner, LLC* 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004) concluded plaintiff lacked standing based on a similar set of factors:

> First, Mr. Brother lives more than two hundred and eighty (280) miles away from the subject property, and admits that he travels to the greater Orlando area (Disney World in particular) only about twice a year. Second, Mr. Brother's testimony indicates he lacks "a continuing connection" to the subject property. *See Rodriguez v. Investco, L.L.C*., 305 F. Supp. 2d 1278, 1284-85 (M.D. Fla. 2004)(finding that litigious ADA plaintiff failed to establish any basis for relief where he lacked a continuing connection to the defendant's facility). Mr. Brother, after all, found the Best Western Deltona Inn "by chance." He had never attempted to stay at the location prior to the Fall or Winter of 2002. Moreover, he has not attempted to return to the Best Western Deltona Inn since that time….This Court additionally notes that there are countless other hotels located closer to Disney World than the Best Western Deltona Inn (which is approximately fifty miles from the tourist attraction) including hotels that Mr. Brother is suing.
>
> The Fact that Mr. Brother made a reservation at the Defendant's hotel after he filed his Complaint in this action is immaterial. So, too, are any other facts and circumstances related by Mr. Brother after he commenced this civil action. "The existence of standing is determined as of the date suit is filed." *Moyer v. Walt Disney World, Co*., 146 F. Supp. 2d 1249, 1253 (M.D. Fla. 2000)(internal citation omitted)….

Plaintiff has provided zero evidence of any "threat of future injury" and, as such, does not have standing as a matter of law. *Shotz v. Cates*, 256 F. 3d at 1081. Using the same set of factors as set forth above in *Rosenkratz* and *Steven Brothers*, Plaintiff lacks standing to bring the instant suit against Captain Hiram's for the following reasons 1.) Plaintiff lives 133 miles away 2.) has provided no testimony of consistent travel to or a "continuing connection" to the Sebastian area-- just as Mr. Brother, Plaintiff found the Best Western Plus "by chance"[1] 3.) Plaintiff has never attempted to stay at the Best Western Plus prior to January 31, 2017; and 4.) Plaintiff has not returned to the Best Western Plus and has no plans to do so.

Plaintiff testified as follows with respect to her plans to return to the Best Western Plus:

```
BY MR. PARKER:
 2    Q.   There's no friends in Sebastian, you've got no
 3  family in Sebastian, correct?
 4    A.   It's a beautiful place.
 5    Q.   Well, I understand that.  There's lots of
 6  beautiful places.  But I'm just saying other than that,
 7  and the fact that it's a beautiful place, is that the
 8  only reason that you would even pass through Sebastian?
 9       MR. CULLEN:  Objection to form.
10       THE WITNESS:  Sometimes it's on the way to
11    someplace else.  I'm dying to go down to Pelican
12    Island.
13  BY MR. PARKER:
14    Q.   You have no current plans to go back to
15  Sebastian, do you?
16       MR. CULLEN:  Objection to form.
17       THE WITNESS:  Yeah.
18  BY MR. PARKER:
19    Q.   Yeah?  When?
20    A.   Well, I can't tell you when, but I plan to go
21  back.
```

Kennedy Depo., Pg. 150, Lines 1-21.

```
16       THE WITNESS:  I don't know exactly when, but I
```

---

[1] *See Steven Brothers v. Tiger Partner, LLC* 331 F. Supp. 2d at 1373.

7

```
17      definitely have plans to go back.
18   BY MR. PARKER:
19      Q.  Well, if you have plans, okay, what are the
20   plans then?  If you don't know when, what are the plans
21   that you're going back to Sebastian for?
22          MR. CULLEN:  Objection to form.
23          THE WITNESS:  Let's see.  Probably sometime in
24      August.  That's all I can tell you.  I haven't
25      figured things out.
```

Kennedy Depo., Pg. 151, Lines 16-25.

```
 1   BY MR. PARKER:
 2      Q.  Well, that's -- again, now we're talking time.
 3   You said you had plans.  What are the plans that you're
 4   going to go in August?  What are you planning on doing?
 5          MR. CULLEN:  Objection to form.
 6          THE WITNESS:  They're not specific.  I just
 7      know that I want to go back, so that's all I can
 8      tell you.
```

Kennedy Depo., Pg. 152, Lines 1-8.

```
23   BY MR. PARKER:
24      Q.   That's not my question.  Did you go there as
25   an individual simply to check into the hotel for

 1   overnight or did you go there with the specific intent
 2   to become a tester for the facilities as to whether or
 3   not they complied with the ADA standards?
 4          MR. CULLEN:  Objection to form.
 5          THE WITNESS:  I do not remember the specific
 6      intent.  I don't.
```

Kennedy Depo., Pg. 158, Line 23 through-159, Line 6.

```
25      THE WITNESS:  There are situations that I can

 1      get -- I get complaints from people and I will go
 2      out and see what the situation is.  I don't know
 3      the particular circumstance with that location, so
 4      I can't tell you that.
 5   BY MR. PARKER:
 6      Q.   So, you don't know in what capacity you were
 7   there that day, either individually just as Patricia
 8   Kennedy looking for a nice weekend or a nice evening
 9   away from your home or as their tester specifically to
10   try to locate any problems with the ADA standards?
```

8

```
11          MR. CULLEN:  Object to form.
12          THE WITNESS:  Right, I don't know the
13     specifics.
```

Kennedy Depo., Pg. 159, Line 25 through Pg. 160, Line 13.

```
 8  BY MR. PARKER:
 9     Q.  You've not been back for one of your
10  reinspections that you've talked about?
11          MR. CULLEN:  Object to form.
12          THE WITNESS:  I've been sick and --
13  BY MR. PARKER:
14     Q.  It's a very simple question.  I'm not asking
15  you why.
16     A.  No.
17  Q.  Okay.  That's all I'm asking.
18     A.  No.
19     Q.  You haven't been back?
20     A.  I plan to go back, so...
21     Q.  Okay.  That's because you haven't been
22  instructed to go back yet, correct?
23     A.  No.
```

Kennedy Depo. Pg.161, Lines 8-23.

Kennedy testified further that the reason for her travels with her companion Daniel Pezza three times a month, including on January 31, 2017, was because of "the trees" in that area of Florida versus "the trees" in Broward County Florida.

```
22     Q.  Okay.  So he drives you three times a month
23  around Florida?
24     A.  Yeah.  I love going up there.  There's trees.
25     Q.  What trees?
 1     A.  Trees.  There's no trees here.
 2     Q.  Okay.
 3     A.  Since Wilma, there's no trees.
 4     Q.  No trees.  Okay.  No trees in Broward County?
 5     A.  Not like up there.
 6     Q.  Okay.  Up where?
 7     A.  It's just different.
 8     Q.  Where are we talking about?  Because you --
 9  you say up there.  I don't know where up there is.
10     A.  Yeah.  Well, you know --
```

9

```
11      Q.   Are you talking about the Florida/Georgia
12   line?  Where are you?
13      A.   I'd say -- crap.  I can't think of that city
14   in between.  Like -- let's see.  My friends are in
15   DeBary.  Let me see.  Let me see.  Let me see.  I know
16   it's north of Melbourne.  Maybe Ft. Pierce or around --
17   you get up there, there's just lots of trees.  I mean, I
18   miss that.  I miss that.  I really do.
19      Q.   How could you miss it if you've never lived up
20   there?
21      A.   I enjoy -- I mean, we used to have trees down
22   here.  Wilma took care of that.  I just like the area.
23   It seems, you know, much more open and peaceful.  People
24   are nicer.
```

Kennedy Depo., Pg. 94, Line 22 through Pg. 95, Line 24.

Kennedy was intentionally vague and uninformative and her testimony evidenced that she had no reason to go to Sebastian other than to hunt for ADA litigation and could not recall anything about the trip or the Best Western Plus or when she finally arrived. Statement of Material Facts, ¶ 18. Kennedy certainly did not provide any testimony to support a threat of future injury sufficient to establish standing to bring suit for injunctive relief under the ADA as a matter of law. Quite simply, Kennedy has no standing to maintain this litigation.

      **i.     Kennedy's Claim is Limited to Barriers She Actually Encountered and Was Aware Of At The Time She Filed Her Complaint**

Kennedy's inspection of the Best Western Plus does not automatically confer upon her a presumption that she would be injured or would be exposed to injury, by any and all architectural barriers therein. *See Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1365 (S.D. Fla. 2001). Kennedy makes a blanket conclusory allegation in her Complaint that she "has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA." D.E., 1, ¶ 13. Kennedy does not allege any specific injury in fact or specify any part of her stay at the

Best Western Plus that she was prevented from the full enjoyment and use of because of any barrier on the Best Western Plus property. Kennedy's testimony at deposition solidifies that she did not suffer any actual injury in fact during her stay at the Best Western Plus. None of the alleged barriers encountered by Kennedy were such that it caused her to leave, ask for assistance, or interrupt her one-night stay at the Best Western Plus.

At the time an ADA lawsuit is filed, a plaintiff must have had actual knowledge of barrier violations, pursuant either to his personal encounter with the violations or by expert testimony. *Id*. At the time Kennedy filed her Complaint she had only been in Room 110 of the Best Western Plus. Statement of Material Facts, ¶¶'s 13-15; Kennedy Depo., Pg. 167, Lines 18-20. Further, Kennedy testified that she did not have an ADA expert with her at any point during her one night stay at the Best Western Plus. Kennedy Depo., Pg. 36, Lines 11-15.

Plaintiff complains of various barriers in the bathroom of Room 110, including in the shower area. Statement of Material Facts, ¶¶'s 19, 21. When questioned as to whether Kennedy used the shower during her stay, Kennedy testified "I don't remember that. I don't know." Kennedy Depo., Pg. 138, Lines 12-13. Plaintiff claims there were not enough grab bars in the bathroom in room 110 and that there was no fixed seating, which would interfere with use of the shower controls. Kennedy Depo., Pg. 138, Line 22 through Pg. 139, Line 5. However, when questioned if she used the controls or attempted to use the controls for the shower, Plaintiff testified that she "doesn't remember. I don't know. I can't give an answer for that." Kennedy Depo., Pg. 139, Lines 6-9.

Kennedy's testimony lacks credibility and, in fact, directly conflicts with the documentation of her stay at the Best Western Plus. For example, Kennedy testified that Daniel Pezza, the man who drove her to the Best Western Plus, did not stay with her at the Best Western

11

Plus. However, check-in records reflect that there were two (2) guests in Kennedy's room which was a King Bed with a roll-in shower. Statement of Material Facts, ¶ 15. Furthermore, Kennedy could not recall much of anything during her deposition. Kennedy did not know how long it took her to get from her house to the Best Western Plus. Kennedy Depo., Pgs. 101-102. Kennedy did not know what route she took to the Best Western Plus. Kennedy did not know if she made any stops between her house in Tamarac, FL and the Best Western Plus in Sebastian, FL. Kennedy did not know if she had called ahead and made a reservation. Kennedy did not know how or why she decided to turn into Captain Hiram's. Kennedy Depo., Pg. 103, Lines 6-14. Kennedy did not know what direction she was going on her way to the Best Western Plus. Kennedy Depo., Pg. 103, Lines 20-22. Kennedy could not remember what the Best Western Plus's lobby looked like because with all the hotels she sues, "they all look the same after a while." Kennedy Depo., Pg. 116, Lines 10-15. Despite being pushed in her wheelchair by Daniel Pezza into the hotel, Kennedy "could tell", without measuring, the degree of the slope was off. Kennedy Depo., Pg. 120, Line 2 through Pg. 122, Line 7. She could also tell there was a cross slope in the sidewalk as she was pushed from the car parking space area on to the sidewalk in front of the hotel. *Id*. Kennedy, based solely on the feel of the slope, 7 days after she checks out of the Best Western Plus, includes, as an alleged ADA violation against Captain Hiram's that the hotel has failed to provide a compliant "accessible route connecting the disabled parking spaces with all the goods, services and facilities of the property, with insufficient maneuvering space, lack of required clear floor spaces, and obstructions." D.E. 1, GENERAL section, ¶ 3. Not only are the Best Western Plus's accessible routes between the disabled parking spaces and the hotel sidewalk within the tolerable range of slope degrees to fall within ADA compliance, BUT Kennedy testified that she got up to the front desk fine and that it was wheelchair accessible. Kennedy Depo., Pg.122, Lines

12

13-21. The alleged "insufficient maneuvering space, lack of required clear floor spaces, and obstructions" is absolutely baseless. Statement of Material Facts, ¶ 29; *See* Composite Exhibit B-2 to Contreras Affidavit. Kennedy's claims of non-complaint parking space and cross slopes in the Best Western Plus's parking lot are likewise baseless as they fall within ADA tolerances. Statement of Material Facts, ¶ 29; *See* Composite Exhibit B-2 to Contreras Affidavit. But then again, this is Kennedy's mode of operation, go to a random public accommodation, file a Complaint, whether based on actual barriers encountered by Kennedy or not, allege some non-compliance with various stock ADA items such as parking space slopes, bathroom fixtures, etc. and, chances are, you will eventually find some area of non-compliance once the litigation is underway and Kennedy's attorney has churned a fee. As a result, Captain Hiram's is entitled to summary judgment.

## II. ALTERNATIVELY, PLAINTIFF'S CLAIM SHOULD BE DISMISSED AS MOOT

With respect to proving her case, a plaintiff alleging Title III ADA discrimination must initially prove that (1) she is a disabled individual; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA. *See Segal v. Rickey's Restaurant and Lounge, Inc*., 2012 U.S. Dist. LEXIS 87379, 2012 WL 2393769, at *21-22 (S.D. Fla. June 25, 2012). To meet the burden of proof in discrimination cases focused on pre-existing buildings, a plaintiff must present evidence of a barrier, the removal of which is "readily achievable." *See Gathright—Dietrich v. Atlanta Landmarks, Inc*., 452 F.3d 1269, 1273 (11th Cir. 2006); *Access Now, Inc. v. S. Fla. Stadium Corp*., 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001) (discrimination includes "a private entity's failure to remove architectural barriers ... in existing facilities ... where such removal is readily

achievable.") (internal quotation marks omitted) *quoting* 42 U.S.C. § 12182 (b)(2)(A)(iv); *see also* 42 U.S.C. § 12181(9) ("'[R]eadily achievable' means easily accomplishable and able to be carried out without much difficulty or expense."). If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." *Gathright—Dietrich*, 452 F.3d at 1273.

> In an Order dismissing an ADA case, this Court stated:
>
> An issue is moot when actions subsequent to the commencement of a lawsuit create an environment in which the Court can no longer give meaningful relief. *See Jews for Jesus, Inc. v. Hillsborough County Aviation Authority*, 162 F.3d 627 (11th Cir. 1998); *Florida Ass'n of Rehab Facilities Inc. v. Florida Department of Health and Rehab. Servs.*, 225 F. 3d 1208 (11th Cir. 2000). As the issue of mootness is jurisdictional, *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971), the Court must dismiss the claim once the relief sought no longer becomes meaningful. *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201-202 (1969).
>
> *Access for Disabled, et al. v. Brinker Florida, Inc. et al.*, 2003 U.S. LEXIS 28716 *1-2 (S.D. Fla. January 14, 2003).

Furthermore, this Court observed that "the remedies requested by Plaintiff are, for the most part, completed or in the process of being completed….Any course of action by the Court will be repetitive and meaningless." *Access for Disabled, et al. v. Brinker Florida, Inc. et al.*, 2003 U.S. LEXIS 28716 at * 3. Captain Hiram's has remedied all of the alleged barriers Kennedy actually encountered that required remedy and is in the process of renovating all Accessible Guest rooms. Statement of Material Facts, ¶¶'s 29-35.

**A. Kennedy Testified To The Following Barriers She Allegedly Encountered At The Best Western Plus:**

    i.   "Slopes and ramps were excessive" and there is "a cross slope in the sidewalk."

        Kennedy Depo., Pg. 114, Line 25 through Pg. 115, Line 6

    ii.     No rear grab bar in lobby bathroom. Kennedy Depo, Pg. 115, Lines 6-10.

    iii.    Room 110 barriers encountered by Kennedy: 1.) Back of toilet bar too short; 2.) flush valve wrong side of toilet; 3.) mirrors too high; 4.) no fixed seating in bathroom; 5.) not enough grab bars in bathroom; 6.) insufficient maneuvering space around bed; 7.) coffee pot placed too far back on table. Kennedy Depo, Pg. 132, Line 23 through Pg. 133, Line 14; Pg. 135, Lines 18-20; Pg. 136, Lines 15-17; Pg. 137, Lines 6-12; Pg. 138, Lines 1-9; Pg. 139, Lines 4-5; Pg. 140, Lines 4-15; Pg. 140, Lines 19-25; Pg. 141, Lines 7-15.

    iv.    Insufficient knee clearance at tables around pool and in dining room area of hotel. Pg. 141, Line 24 through Pg. 142, Line 7.

Statement of Material Facts, ¶ 21.

All of the above barriers have either been remedied to be brought within the ADA requirements, are not violations of the ADA, or in the process of being renovated during the Best Western's current renovation. Statement of Material Facts, ¶¶'s 29-35.

| Alleged Barrier | Action Required | Applicable ADA Code |
|---|---|---|
| Cross Slope and Running Slopes not in compliance with percentage slope requirements | None. All cross slopes and running slopes on the property noted in the Accessibility Inspection Report drafted by Kennedy's expert are within construction tolerances for existing facilities.<br><br>*See* Statement of Material Facts, Composite Exhibit B-2 attached to Contreras Affidavit. | ADA§3.2 Dimensional Tolerances<br>ADA§ 104.1.1 Construction and Manufacturing Tolerances |
| Room 110 barriers: 1.) Back of toilet bar too short; 2.) flush | All items either already remedied or int heprocess of being renovated in | |

| | |
|---|---|
| valve wrong side of toilet; 3.) mirrors too high; 4.) no fixed seating in bathroom; 5.) not enough grab bars in bathroom; 6.) insufficient maneuvering space around bed; 7.) coffee pot placed too far back on table. | compliance with ADA Standards.<br><br>Statement of Material Facts, ¶¶'s 29-34; see also Composite Exhibit B-2 attached to Contreras Affidavit. |
| No rear grab bar in lobby bathroom. | Repair completed.<br><br>Statement of Material Facts, ¶ 29 |
| Insufficient knee clearance at tables around pool and in dining room area of hotel. | Issue resolved with the addition of 1 wheelchair accessible table around the pool and 1 in the dining area.<br><br>Statement of Material Facts, ¶ 33 |

B. **The Alleged Barriers Set Forth In Kennedy's Complaint Are As Follows**:

  i.   Defendant fails to adhere to a policy, practice and procedure to ensure that all goods, services and facilities are readily accessible to and usable by the disabled (Complaint, ¶ 7);

  ii.  Defendant fails to maintain its features to ensure that they are readily accessible and usable by the disabled (Complaint, ¶ 7);

  iii. There is a lack of compliant, accessible route connecting the disabled parking spaces with all the goods, services and facilities of the property, with insufficient maneuvering space, lack of required clear floor spaces, and obstructions (Complaint, ¶ 7);

  iv.  There is insufficient number of compliant parking spaces and access aisles, with lack of compliant signage (Complaint, ¶ 7);

  v.   There are non-compliant restrooms, with missing grab bars, inaccessible commodes, and non-compliant door hardware (Complaint, ¶ 7) ;

16

      vi.    There is an insufficient number of designated accessible guest rooms, with insufficient maneuvering space, lack of required clear floor spaces, obstructions, improperly located amenities, inaccessible commodes, lack of compliant grab bars, flush controls on wrong side, non-compliant doorways, insufficient door clearance, non-compliant tub/showers, inaccessible sinks, unwrapped pipes, poorly wrapped pipes, and pipe wrapping falling off. Complaint, ¶ 7.

The above listed barriers are clearly a cut and paste laundry list from other ADA cases Kennedy has brought because several are simply inapplicable. Of the above listed items in the Complaint, several are not violations of the ADA and simply are incorrect.

| **Alleged Barrier** | **Action Required** | **Applicable ADA Code** |
|---|---|---|
| Defendant fails to adhere to a policy, practice and procedure to ensure that all goods, services and facilities are readily accessible to and usable by the disabled | This area of Kennedy's Complaint is overly broad and lacks any specificity that would allow Captain Hiram's to address any alleged non-compliant item | |
| Defendant fails to maintain its features to ensure that they are readily accessible and usable by the disabled | This area of Kennedy's Complaint is overly broad and lacks any specificity that would allow Captain Hiram's to address any alleged non-compliant item | |
| There is a lack of compliant, accessible route connecting the disabled parking spaces with all the goods, services and facilities of the property, with insufficient maneuvering space, lack of required clear floor spaces, and obstructions | All surface slopes are within construction tolerances.<br><br>*See* Statement of Material Facts, Composite Exhibit B-2 attached to Contreras Affidavit | |
| There is insufficient number of compliant parking spaces and access aisles, with lack of compliant signage | | |
| There are non-compliant restrooms, with missing grab bars, inaccessible commodes, and non-compliant door | Kennedy does not identify specific restrooms that are non-complaint but rather elements within | |

17

| | | |
|---|---|---|
| hardware | restrooms –The only two restrooms Kennedy could have arguably gone in would be the women's lobby restroom and the bathroom located in Room 110. | |
| There is an insufficient number of designated accessible guest rooms, with insufficient maneuvering space, lack of required clear floor spaces, obstructions, improperly located amenities, inaccessible commodes, lack of compliant grab bars, flush controls on wrong side, non-compliant doorways, insufficient door clearance, non-compliant tub/showers, inaccessible sinks, unwrapped pipes, poorly wrapped pipes, and pipe wrapping falling off | The Best Western Plus has 56 rooms and has the requisite 4 Accessible Guestrooms (1 with roll-in shower) pursuant to ADA § 9.1.2 | ADA § 9.1.2 |

1.) Best Western Plus is in compliance with the ADA standards for hotels in having four Accessible Guest rooms out of a total of 56 guest rooms and 2.) the Best Western Plus has 61 parking spaces with four designated disabled parking spaces in compliance with ADA standards. Additionally, there are several items listed in the Complaint that Kennedy did not testify were *actually* barriers that she encountered such as non-compliant doorways, insufficient door clearance, inaccessible sinks, unwrapped pipes, poorly wrapped pipes and pipe wrapping falling off. Finally, Kennedy did not testify that she had any issues with "maneuvering space, lack of required clear floor spaces, and obstructions" between the parking space and the entrance to the hotel as the Complaint alleges. The only issue Kennedy complained of was the slope and cross slope angles were excessive in her opinion.

Alternatively, the Court should identify only those issues that require resolution in what will be a non-jury trial, and grant Partial Summary Judgment as to the rest.

## CONCLUSION

Kennedy has failed, as a matter of well settled federal law, to show she has Standing to bring suit against Captain Hiram's for ADA injunctive ADA relief. Kennedy has failed to present any evidence that she has suffered and will continue to suffer an injury in fact based on any alleged discriminatory ADA barriers caused by Captain Hiram's. In fact, Captain Hiram's has instituted a total renovation of its Best Western Plus property to make sure there are no ADA barriers and make sure its facility is in full compliance with the ADA. Accordingly, Kennedy's claim for ADA violations against Captain Hiram's must fail in its entirety and final summary judgment in favor of Captain Hiram's is not only warranted but required.

Dated: September 1, 2017,

        Respectfully submitted,
        */s/James K. Parker, Esq.*
        **James K. Parker, Esq.**
        Florida Bar No.: 157526
        Email: jparker@boydlawgroup.com
        **Yvette R. Lavelle, Esq.**
        Florida Bar No.: 48107
        Email: ylavelle@boydlawgroup.com
        Boyd Richards Parker & Colonnelli, P.L.
        100 S.E. Second Street – Suite 2600
        Miami, Florida 33131
        Telephone: 786-425-1045
        Facsimile: 786-425-3905
        Service of pleadings:
        servicemia@boydlawgroup.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 1, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I ALSO CERTIFY that the foregoing documents are being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/James K. Parker*
**James K. Parker, Esq.**

## SERVICE LIST

| **Thomas B. Bacon, Esq.**<br>Thomas B. Bacon, P.A.<br>1119 S. Ocean Drive<br>Ft. Pierce, Florida 34949<br>Tel: 954-478-7811<br>Fax: 954-237-1990<br>tbb@thomasbaconlaw.com<br><br>*(Counsel for Plaintiff)* | **Philip Michael Cullen, Esq.**<br>621 S. Federal Highway, Suite 4<br>Ft. Lauderdale, Florida 33301<br>Tel: 954-462-0600<br>Fax: 954-462-1717<br>CullenIII@aol.com<br><br>*(Counsel for Plaintiff)* |